UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EDWARD L. BRITTON,<br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>Defendant. | )<br>)<br>)<br>) Cause No.: 2:13-CV-388-PRC<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Edward L. Britton on October 29, 2013, and a Social Security Opening Brief of Plaintiff [DE 20], filed on April 18, 2014. The Commissioner filed a response brief on July 21, 2014, and Plaintiff filed a reply on August 7, 2014. Plaintiff challenges the July 18, 2012 decision of the Administrative Law Judge (ALJ) that he is not disabled under the Social Security Act.

**I. Background**

Plaintiff filed an application for supplemental security income with the Social Security Administration on February 28, 2011, alleging that paralysis of his left arm, two broken ribs, and eye problems left him unable to work. His application was denied initially and upon reconsideration. He filed a request for a hearing before an ALJ, which took place on July 6, 2012, in Valparaiso, Indiana, before ALJ William Sampson. The ALJ heard testimony from Plaintiff as well as from vocational expert (VE) Dr. Leonard Fisher. Plaintiff appeared for the hearing by video conference and was represented by attorney Veda Dasari.

On July 18, 2012, the ALJ issued a written decision denying Plaintiff's claims for disability benefits, making the following findings.

> 1. The claimant has not engaged in substantial gainful activity since February 28, 2011, the application date.
>
> 2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and residuals of a left upper extremity injury.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant is able to occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. The claimant is unable to climb ropes, ladders, or scaffolds. The claimant can occasionally feel on the left with no reaching, handling, or fingering on the left. Finally the claimant must avoid concentrated exposure to hazardous machinery and heights.
>
> 5. The claimant has no past relevant work.
>
> 6. The claimant was born in 1963 and was 47 years old, which is defined as a younger individual age 18–49, on the date the application was filed.
>
> 7. The claimant has at least a high school education and is able to communicate in English.
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since February 28, 2011, the date the application was filed.

On August 29, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On October 29,

2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,*

3

705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [the court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [the ALJ's] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite

[the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

Plaintiff marshals three arguments for why the ALJ's decision should be remanded for further consideration. He contends (1) that the ALJ erred by failing to properly accommodate Plaintiff's upper extremity limitations, (2) that the ALJ erred in making his credibility assessment, and (3) that the ALJ failed to properly weigh the opinion of treating physician Dr. Seabrook. The Court considers each argument in turn.

### A. Right Upper Extremity Limitations

Plaintiff was hit by a motorcycle in 1977. He spent the next two months in intensive care recovering and was left with a paralyzed upper left extremity. As a result, his left arm and chest are severely atrophied. Plaintiff contends that he has overcompensated with his right extremity and that it has significantly weakened.

In light of this, Plaintiff contends that the ALJ erred in not including any right upper extremity restrictions in his RFC finding. He points out that the Agency's own consulting examiner, Dr. Saavedra, found that Plaintiff could not lift his arm above shoulder height and had reduced strength in his right arm and right hand.

The Commissioner responds that the ALJ's RFC was supported by normal X-ray results of the right shoulder and by the opinions of the state agency reviewing physicians, neither of whom

6

opined that any right upper extremity restrictions were required. Further, she points out that both of the reviewing physicians considered Dr. Saavedra's findings in crafting their opinions.

The ALJ may not ignore evidence that is favorable to the plaintiff, *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000), and must resolve potential conflicts in evidence, *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citing *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002); *Godbey*, 238 F.3d at 808). Though he discussed parts of Dr. Saavedra's opinion, the ALJ made only brief mention of limitations regarding Plaintiff's right upper extremity and, more significantly, did not rectify the apparent disagreement between Dr. Saavedra and the two reviewing physicians about Plaintiff's ability to use his right upper extremity. The ALJ merely stated that the opinions of the reviewing physicians were supported by Dr. Saavedra's exam results, without providing analysis. This was an error. A fuller discussion of this evidence, as well as consideration of the potential conflict regarding Plaintiff's right upper extremity, was required, especially since the findings were made by the Agency's own reviewing physician. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (explaining that agency doctors are unlikely to exhibit favoritism since the people they are seeing aren't their patients and doing so "would not go down well with the agency" (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

The Commissioner argues in the alternative that any error was harmless because at least one job mentioned by the VE—school bus monitor—does not require reaching. *See Dictionary of Occupational Titles*, Job No. 372.667-042. A finding of harmless error is appropriate only when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). No such confidence is

7

warranted here. The Commissioner is correct that the DOT listing for School Bus Monitor does not require reaching. But it is far from certain what right upper extremity restriction the ALJ would have placed on Plaintiff had he properly discussed the potentially conflicting evidence. The Court does not have "great confidence" that the restrictions (if any) would comport with the requirements of the job. Further, it is also unclear whether school bus monitor jobs qualify as SGA. These are the sort of questions that should be answered by a VE at a hearing.[1] On remand, the ALJ should consider the potentially conflicting evidence regarding right upper extremity limitations and support his RFC determination with a detailed and reasoned explanation.

## B. Credibility

Plaintiff also contends that the ALJ made a number of errors in evacuating Plaintiff's credibility. In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the claimant's symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. In determining whether statements of symptoms contribute to a finding of disability, the regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity

---

[1] Moreover, as acknowledged by the VE, the DOT is something of a dinosaur. Recently, the Seventh Circuit Court of Appeals has questioned the appropriateness of relying on "a 23-year-old edition of the *Dictionary of Occupational Titles*, which is no longer published," and is based on information from thirty-seven years ago. *Browning v. Colvin*, No. 13-3836, – F.3d –, 2014 WL 4370648, at *6 (7th Cir. Sept. 4, 2014). "No doubt many of the jobs have changed and some have disappeared. We have no idea how vocational experts and administrative law judges deal with this problem." *Id.* And, as that court pointed out, courts are also left in the dark about the source and accuracy of the VE's job numbers. *Id.* These failings undermine the ability of courts to engage in meaningful review.

8

and persistence of these symptoms. *Id*.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

1. The individual's daily activities;

2. Location, duration, frequency, and intensity of pain or other symptoms;

3. Precipitating and aggravating factors;

4. Type, dosage, effectiveness, and side effects of any medication;

5. Treatment, other than medication, for relief of pain or other symptoms;

6. Other measures taken to relieve pain or other symptoms;

7. Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, 1996 WL 374186, at *6 (Jul. 2, 1996). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Because this case is being remanded on other grounds, however, the Court declines to consider whether the ALJ's credibility analysis warrants reversal independently. Instead, the Court considers whether there are any errors (reversible or not) that could be rectified on remand.

9

The ALJ engaged in speculation as to why Plaintiff did not get certain treatments or had gaps in treatment. Further inquiry is warranted. On remand, the ALJ should ask why Plaintiff had gaps in treatment, why he did not go to a specialist, why he did not go to an emergency room for treatment when his pain was at a 9/10, and why he did not attend the prescribed physical therapy sessions. *See Myles v. Astrue*, 582 F.3d 672, 677–78 (7th Cir. 2009). He should also discuss in greater detail why the treatment was conservative, considering whether more aggressive treatment was, in fact, appropriate.

The ALJ also pointed to Plaintiff's prior work back in 1989 and 1990 as undercutting his claims that he cannot work. The past work may be relevant, but the discussion should have considered the degree to which overuse and other deterioration, especially in the upper right extremity, affected Plaintiff's ability to work since then. Further, the ALJ should discuss whether the inconsistences in the record (e.g. conflicting reports about Plaintiff's ability to handle objects, use a zipper, work buttons, etc.) were a result of deterioration. The Court also notes that the ALJ's statement that Plaintiff had made inconsistent complaints about the side effects of his prescribed muscle relaxer is not borne out by the medical records he relied on to support that proposition. One record the ALJ looked to does not mention muscle relaxers. (AR 153). The other states that "[s]ince taking muscle relaxers, I sleep a lot and feel tired," which is consistent with what Plaintiff stated at the hearing. (AR 162). The negative inference was inappropriate. *See Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). The ALJ's statement that Plaintiff's well-groomed appearance reduced his credibility (despite his testimony that he had help getting ready) fails to provide any explanation or reasoning and should be clarified on remand. *See Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

Finally, the Court notes that the ALJ found that Plaintiff had severe impairments but that

10

examination results did not indicate that he was prevented from performing basic work activities. As Plaintiff points out, this contradicts the applicable regulation, which defines a severe impairment as one that "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920. This error should be corrected on remand.

### C. Opinion of Treating Physician

Plaintiff also argues that the ALJ erred by failing to properly analyze the weight given to the opinion of treating physician Dr. Seabrook. The ALJ must give a treating physician's opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p, 1996 WL 374184 (Jul. 2 1996); SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996).

The Agency's regulations list factors for the ALJ to consider; these are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. §§ 404.1527(c), 416.927(c). "[I]f the treating source's opinion passes muster under [§ 404.1527(c)(2)], then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives a good reason. *Schaaf*, 602 F.3d at 875; *Skarbek*, 390 F.3d at 503.

Treating physician Dr. Seabrook submitted a medical source statement to the Agency. The statement opined that Plaintiff could sit for more than two hours before needing to get up and could stand for more than two hours before needing to sit down. It also stated that Plaintiff could sit for a total of about two hours and stand for a total of about two hours in an eight-hour work day. She also opined that he needed two half-hour unscheduled breaks per day; that he could lift or carry objects weighing less than ten pounds, but could do so only rarely; that he could rarely twist, stoop, crouch, squat, or climb stairs or ladders; and that he could use his right hand for grasping, fine manipulation, and reaching overhead or in front of his body only fifty percent of the time. She also opined that he would be off-task about twenty percent of the workday, could not perform even low stress work, and would have more than four absences from work per month.

The ALJ afforded this opinion little weight, stating that the sitting and standing limitations were internally inconsistent, that the findings were inconsistent with those of consulting physician Dr. Saavedra, and that these findings were unsupported by the rest of the record. Plaintiff contends that the ALJ failed to provide a sound basis for not affording treating physician Dr. Seabrook's opinion controlling weight and failed to properly weigh Dr. Seabrook's opinion. Since this matter is being remanded on other grounds, the Court forgoes deciding whether remand is mandated and instead considers what errors should be addressed on remand.

Regarding internal inconsistency, it appears that the ALJ misunderstood Dr. Seabrook's opinion, which states that Plaintiff can sit and stand for *more than* two hours at a time; this, the ALJ stated, indicated that Plaintiff could sit or stand for *about* two hours at a time. The ALJ should revisit this on remand. *See Clifford*, 227 F.3d at 871 (7th Cir. 2000).

The ALJ also observed that Dr. Seabrook's opinion on Plaintiff's postural, lifting, and

12

carrying abilities was inconsistent with the abilities Plaintiff demonstrated upon consultative examination by Dr. Saavedra. Plaintiff objects that this conclusion is unsupported since Dr. Saavedra did not test or opine to the amount of weight Plaintiff could carry, the length of time he could carry certain amounts, or how long Plaintiff could engage in postural activities during the work day. This is true, but not as persuasive as Plaintiff makes it out to be because Dr. Saavedra *did* opine that Plaintiff had only slightly decreased strength in all right upper extremity muscle groups and had normal gait, could stoop, squat, heel–toe walk, and tandem walk without difficulty. Though these opinions do appear somewhat inconsistent, a more detailed discussion of them is nevertheless warranted on remand. In addition, the ALJ should reassess the weight given to Dr. Seabrook's statement in light of the corrected evaluation of Plaintiff's limitations (if any) regarding his right upper extremity. Moreover, on remand, the ALJ should also provide a more detailed analysis of the relevant factors he looked to in evaluating Dr. Seabrook's opinion.

## V. Conclusion

Based on the foregoing, the Court **GRANTS** the relief sought in the Social Security Opening Brief of Plaintiff [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 1st day of December, 2014.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record